FILED

DEC 2 1 2022

Clerk of the Appellate Courts
Rec'd By _____

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 18, 2022 Session

## CARRIE ELIZABETH BEAN v. JORDON ESTES BEAN

**Appeal from the Circuit Court for Sumner County**
**No. 2018-CV-994    Joe Thompson, Judge**

---

### No. M2022-00394-COA-R3-CV

---

Mother appeals the trial court's decision to award equal parenting time after making no findings regarding her allegations of abuse by Father. Because the trial court stated that there was no evidence of abuse in the record despite the plethora of relevant testimony by both parties, we are unable to ascertain the trial court's reasoning. We therefore vacate the trial court's judgment and remand for further findings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

J. STEVEN STAFFORD, P.J., W.S. delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY ARMSTRONG, JJ., joined.

Donald Capparella and Patrick Riley, Nashville, Tennessee, for the appellant, Carrie Elizabeth Bean.

Kimberley Reed-Bracey Johnson, Goodlettsville, Tennessee, for the appellee, Jordon Estes Bean.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff/Appellant Carrie Elizabeth Bean ("Mother") and Defendant/Appellee Jordon Estes Bean ("Father") were married December 30, 2016. Together the parties had one child, a daughter born in December 2017. The parties separated for the last time in September 2018.

---

[1] This case originates from a complaint for divorce between parties with a minor child. As only the parenting plan has been appealed, other aspects of the action relating to dissolution of the marriage have been omitted.

Mother filed for divorce in the Circuit Court for Sumner County ("the trial court") on October 12, 2018. Mother originally requested to be the primary residential parent but asked for equal parenting time. The initial parenting plan proposed by Mother on October 26, 2018, gave Father custody every Monday to Tuesday and then Friday to Sunday, with Mother having custody every Tuesday to Friday and Sunday to Monday. With split holidays, this would provide Mother 209 days with the child and Father 156 days. Mother requested that this plan be implemented for the duration of the divorce proceedings.

On November 1, 2018, Father filed a motion with the trial court, requesting approval of his temporary parenting plan. His proposed plan had the parties alternating custody of the child every two days. Father then answered Mother's complaint for divorce on December 7, 2018. In his attached proposed parenting plan, Father again requested equal parenting time, with the parties exchanging custody of the child every two days and splitting holidays for a total of 182.5 days each.

An agreed order was entered December 21, 2018, regarding the parties' motions to implement their respective temporary parenting plans. The trial court noted that the parties had reached an agreement whereby they would share joint primary custody, with Mother having the child Tuesday through Thursday, Father having the child Monday and Friday through Saturday, and the parties alternating custody every other Sunday.

The divorce action was set for hearing July 28, 2020. Mother's pretrial brief included reference to her concerns regarding an incident where the child bit Father's penis, as well as Father's drug use and physical abuse toward Mother. Mother's proposed permanent parenting plan asked that Mother be named the primary residential parent, having custody of the child for 285 days per year. Under this plan, Father would have custody alternating Friday morning to Sunday evening one week and then Wednesday evening the following week, for a total of eighty days per year. Father's pretrial brief disputed Mother's account of the biting incident, described other alleged inconsistencies with the parties' co-parenting experiences, and again requested equal parenting time.

At trial, only Mother and Father testified. Mother explained her concerns with Father's treatment of his mental health and his drug use. Mother then described an incident where Father informed her that the child had bitten his penis through his shorts and drawn blood while he was putting her down for a nap. Mother expressed that this "set off red flags and major alarms" for her, scared her, and overall seemed suspicious. Mother also testified regarding physical altercations with Father—once when Father allegedly closed her leg in a door repeatedly, leaving bruises, and once when Father allegedly shoved her and placed his hands around her neck. Mother admitted to kicking Father in defense as part of this second incident.

Father disputed Mother's interpretation of the incident where the child bit him, explaining that the child was simply going through "the biting stage." Father described

times where Mother became violent with himself and others. He explained his mental and physical health history, including a post-traumatic stress disorder diagnosis from his service in the military. Father also described his relationship with prescription medications and other drugs, denying any use of steroids but acknowledging a short period of time before the birth of the child where he inappropriately used some opiates from an earlier surgery. Father explained that he initially sought counseling, but then turned to prayer and familial support to end the opiate misuse. Now Father takes a prescribed anxiety medication daily and an antihistamine prescribed to counter anxiety attacks only as needed. Father was adamant that he has no current drug use issues.

After Father's testimony, the trial court asked counsel for both parties if there were more witnesses to be called. Both parties had other witnesses available to testify. Rather than the hear the testimony of these witnesses, however, the trial court ordered both parties to submit to hair follicle drug testing and have the results filed within 48 hours. The trial court then stated:

> If [the test results are] both negative, then I'll give you the schedule. I don't think the additional witnesses that you have are going to change the way I feel about this case. I think the drug test results might. So I want to get those results. I want to see what they say. Then I'll bring you back in here and let you know next week.

When counsel for Father asked whether the trial court thought it needed the other witnesses, the trial court replied that "I really don't. I mean, let's be honest. . . . To be honest with you, I don't know that there's a lot that would change the way I feel, other than these drug results." Counsel for Mother asked if the testimony of Father's ex-wife would be taken, as Mother believed the testimony would be relevant to Father's character, parental fitness, and drug history. The trial court explained that it did not think the testimony would be relevant as Father had admitted to the prior drug abuse, so the trial court was only concerned with any current drug problems. The trial court ended the proceedings by explaining that the parenting plan would be set once the drug testing results were received. Both parties returned a negative drug panel.

On October 21, 2020, Mother filed a motion for further findings of fact and conclusions of law, or alternatively for the reopening of the proof.[2] In this motion, Mother argued that Father's parenting time should be limited pursuant to Tennessee Code Annotated section 36-6-406. In addition, Mother requested that the trial court consider additional factors, including the effects of Father's proposed plan on her work schedule and the cost of childcare, in its fashioning of a permanent parenting plan. Mother also requested additional findings regarding Father's mental health, drug usage, and alleged

---

[2] As far as we can tell, the only thing that prompted this filing is that Mother retained additional counsel who remain her counsel through this appeal.

abusive behavior. Alternatively, Mother requested that the proof be reopened to allow testimony from Father's ex-wife, to assist the trial court in determining the best parenting arrangements.[3] Father initially responded in opposition to Mother's motion on December 3, 2020.

The trial court issued a final decree of divorce on November 12, 2020. Relevant to this appeal, the trial court found most statutory best interest factors favored the parties equally or did not disfavor either party, two factors were not relevant based on the child's young age, the factor involving the child's primary care giver favored Mother, and the factor involving continuity favored Father. As most pertinent here, in relation to "evidence of physical or emotional abuse to the child, to the other parent or to any other person," the trial court found "no evidence to consider this factor." The trial court adopted Father's proposed 2-2-2 parenting plan, requiring the parties to exchange custody every two days, with modifications, including Mother's designation as the primary residential parent.

A hearing on Mother's pending motion for additional findings was held on December 7, 2020. During this hearing, both parties outlined the evidence in the record regarding Father's mental health and drug use, the mutual allegations of abuse, and the parties' work schedules. In a document captioned as an agreed order entered on December 18, 2020, the trial court denied Mother's motion in regard to Father's mental health and drug usage but stated that it would take Mother's motion under advisement regarding her work schedule, the allegations of abuse, and her request to reopen the proof.[4]

On April 7, 2021, the trial court entered an order granting Mother's motion to reopen the proof regarding: (1) "The best interests of the child in implementing the differing permanent parenting plans proposed by the parties"; and (2) "the testimony of [Father's ex-wife]." The trial court cautioned the parties and their counsel to be mindful of presenting redundant proof. The matter was eventually heard on September 7, 2021. Both parties presented witnesses to offer testimony regarding their employment history and work schedules. Mother called Father's ex-wife to describe incidents of physical and emotional abuse within their relationship.[5] Mother was then brought back to the stand, to testify regarding the effects of the 2-2-2 custody arrangement on the child and on her own work situation. Both parties were asked about an incident where Mother had become aggressive toward Father prior to the marriage. Father disputed the testimony of his ex-wife and reiterated his request for equal parenting time. The trial court requested that the parties submit proposed findings of fact and conclusions of law relating to the testimony from the original hearing on July 28, 2020, and the hearing after the reopening of the proof.

Thereafter, Mother submitted two proposed findings of fact and conclusions of law:

---

[3] In support of her request, Mother offered a brief synopsis of the expected testimony.
[4] The document was signed as "approved for entry" by counsel for both parties.
[5] This marriage was annulled in 2009.

- 4 -

one in support of limiting Father's parenting time and one presupposing equal parenting time. In both submissions, Mother included extensive recitations of the evidence in the record, relating primarily to the abuse factor, for the trial court's consideration in formulating its final order. Father then presented proposed findings of fact and conclusions of law relating to an equal parenting plan. Therein, Father included multiple pages describing the evidence in the record specifically relating to the abuse factor for inclusion in the trial court's final order.

The final order was entered February 3, 2022. The trial court explained that it did not find the testimony of Father's ex-wife to be credible. The trial court also found that based on the parties' work schedules and the best interests of the child, the parties would have equal parenting time pursuant to the 2-5-5-2 schedule proposed by Mother, where Mother would have two days of parenting time, then Father would have five days of parenting time, then Mother would have five days and Father would have two days, and the cycle would repeat for a total 182.5 days each. No additional findings were made relative to the allegations of abuse by either party. Mother filed a timely appeal.

## II. ISSUES PRESENTED

Mother raises two issues, which are taken from her brief:

1. When presented with evidence of abuse, Tennessee Code Annotated § 36-6-406(a) mandates that the trial court limit the abuser's parenting time. The trial court below was presented with reliable evidence showing Father's history of abuse but still gave the parties equal parenting time. Where the trial court made no findings about whether Father's abuse of Mother and child occurred, does the evidence preponderate in favor of a finding that the record contains "reliable evidence" of abuse, mandating that the Court of Appeals limit Father's parenting time under the authority of *Jacobsen v. Jacobsen*?

2. Did the trial court err as a matter of law by failing to consider Father's abuse of both Mother and the minor child when conducting its best-interest analysis, and did the best interest analysis weigh heavily in favor of Mother and for limiting Father's time given the reliable evidence of his abuse of Mother and child?

## III. ANALYSIS

The underlying issue before us stems primarily from Mother's contention that the trial court failed to make necessary findings regarding the evidence presented of abuse. The Tennessee Rules of Civil Procedure mandate that a trial court, after hearing a case without a jury, "shall find the facts specially and shall state separately its conclusions of

- 5 -

law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01. These findings of fact and conclusions of law must be "incorporated into the trial court's written order, as the court speaks through its orders and not through the transcript of the proceedings." *Friedsam v. Krisle*, No. M2021-00530-COA-R3-CV, 2022 WL 3654658, at *7 (Tenn. Ct. App. Aug. 25, 2022) (citing *In re Navada N.*, 498 S.W.3d 579, 594 (Tenn. Ct. App. 2016)). Requiring trial courts to set out its findings and conclusions has generally been understood as serving three main purposes: (1) aiding appellate review by affording reviewing courts "a clear understanding of the ground or basis of the decision of the trial court"; (2) making it clear "precisely what is being decided by the case" for res judicata purposes; and (3) ensuring that trial courts carefully ascertain and apply the facts, potentially decreasing the need for an appeal. 9C Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2571 (3d ed. 2022) (collecting cases). Overall, the trial court's ultimate objective is for its findings to "be sufficiently comprehensive and pertinent to the issues to provide a basis for decision." *Id.* § 2579.

Mother argues that the trial court's failure to make any findings regarding the allegations of abuse led it to fashion an equal permanent parenting plan against the best interest of the child. In any proceeding "where the custody of a minor child . . . is a question," Tenn. Code Ann. § 36-6-101(a)(1), trial courts are to make custody determinations "on the basis of the best interest of the child." Tenn. Code Ann. § 36-6-106(a). Whether a parenting plan serves the child's best interest is a finding of fact, subject upon appeal to de novo review with a presumption of correctness, unless the evidence preponderates against the findings. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692–93 (Tenn. 2013). However, the ability to observe witnesses firsthand and make credibility determinations puts the trial court in a better position to make the fact-driven decisions regarding parenting arrangements than an appellate court. *Id.* at 693; *see also Gillum v. McDonald*, No. M2003-00265-COA-R3-CV, 2004 WL 1950730, at *4 (Tenn. Ct. App. Sept. 2, 2004) ("Subtle factors may also be determinative, including the demeanor and credibility exhibited by the parents during the divorce proceeding."). "Thus, determining the details of parenting plans is 'peculiarly within the broad discretion of the trial judge.'" *Armbrister*, 414 S.W.3d at 693 (quoting *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988)). As such,

> "It is not the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). A trial court's decision regarding the details of a residential parenting schedule should not be reversed absent an abuse of discretion. *Id.* "An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). A trial court abuses its

discretion in establishing a residential parenting schedule "only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge*, 42 S.W.3d at 88.

*Armbrister*, 414 S.W.3d at 693.

In determining the child's best interest, trial courts are directed to fashion custody arrangements permitting "both parents to enjoy the maximum participation possible in the life of the child[.]" Tenn. Code Ann. § 36-6-106(a). The plan should "permit[ ] both parents to enjoy the maximum participation possible in the life of the child consistent with the [statutory best interest] factors . . ., the location of the residences of the parents, the child's need for stability and all other relevant factors." Tenn. Code Ann. § 36-6-106(a). These factors include:

(1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

(2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. . . .;

(3) Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6) The love, affection, and emotional ties existing between each parent and the child;

(7) The emotional needs and developmental level of the child;

(8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. . . .;

(9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15) Any other factors deemed relevant by the court.

Tenn. Code Ann. § 36-6-106(a).[6]

Trial courts are not simply to perform a rote examination of each factor and tally up those in favor of each party. *Beaty v. Beaty*, No. M2020-00476-COA-R3-CV, 2021 WL 2850585, at *3 (Tenn. Ct. App. July 8, 2021) (quoting *Steakin v. Steakin*, No. M2017-00115-COA-R3-CV, 2018 WL 334445 at *5 (Tenn. Ct. App. Jan. 9, 2018)). Instead, the relevancy and weight of the factors depend on the specific circumstances of the case. *Id.* Indeed, any one factor may prove determinative in the trial court's analysis of an appropriate parenting plan. *Grissom v. Grissom*, 586 S.W.d3d 387, 393 (Tenn. Ct. App. 2019) (quoting *Solima v. Solima*, No. M2014-01452-COA-R3-CV, 2015 WL 459134, at *4 (Tenn. Ct. App. July 30, 2015)). This context-specific analysis means that there can be no bright-line test for us to use in assessing whether the trial court provided sufficient factual findings to underpin its decision. *See Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013). However, the trial court must include in its findings "as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." *Id.* (citation omitted).

Respectfully, the trial court's findings do not meet this standard. Some of the trial court's findings amount to nothing more than legal conclusions without any factual support.[7] The most egregious example of this exists where, when looking to factor (11), consideration of any evidence of physical or emotional abuse to the child, the other parent, or any other person, the trial court only stated that "[t]he Court finds no evidence to consider this factor." Simply put, even a cursory review of the record belies this finding.

---

[6] The current version of this statute includes a sixteenth factor to be considered. Tenn. Code Ann. § 36-6-106(a) (2022). Neither party asserts that the revised version of the statute is applicable in this case, so we will refer to the factors in place at the time the petition was filed. We use the 2016 version of section 36-6-106 throughout this Opinion.

[7] In considering both factor (4), relating to the parties' ability to provide necessary care to the child, and factor (6), relating to the emotional ties between the parties and the child, the trial court simply stated that "[t]he Court finds that this factor favors both parties equally." Similarly, in discussing factor (9), relating to the child's relationship with other relatives and the physical surroundings, the trial court stated that "[t]he Court finds that this factor favors neither party." These finding do not reveal "the steps by which the trial court reached its ultimate conclusion [.]" *Lovlace*, 418 S.W.3d at 35.

- 8 -

The record before us is replete with evidence presented by both parties involving alleged abuse between the parties and against the child. Thus, factor (11) was clearly at issue and the trial court was required to resolve the disputed issues of whether abuse occurred and, if so, who perpetrated that abuse. And the trial court was tasked with including enough of the underlying facts as necessary to explain its ultimate decisions on those issues. *Lovlace*, 418 S.W.3d at 36 (finding the trial court's judgment lacking when it did not "include sufficiently specific findings on the disputed facts that were crucial to determining" the essential elements of the cause of action). Perhaps the trial court determined that none of this testimony was credible or that the violence did not require any limitation of either party's parenting time. However, if the trial court made such a determination it should have more artfully expressed itself so that we are not "left to wonder" about its reasoning. *Grissom*, 586 S.W.3d at 397.

This Court was recently faced with a similar situation in *Friedsam v. Krisle*, No. M2021-00530-COA-R3-CV, 2022 WL 3654658 (Tenn. Ct. App. Aug. 25, 2022). In *Friedsam*, the mother testified regarding incidents where the father had been physically violent, emotionally manipulative, and verbally aggressive towards her. *Id.* at *2. The father denied the accusations, but underwent Rule 35 examinations which raised questions in the examiner about his treatment of others. *Id.* The trial court denied the mother's request to limit the father's parenting time pursuant to Tennessee Code Annotated section 36-6-406,[8] instead granting the parties equal parenting time. *Id.* at *3. The mother specifically raised the fact that the trial court had made no findings regarding whether the father had been physically or emotionally abusive in her motion for additional findings, which the trial court denied. *Id.*

On appeal, this Court agreed with the mother that, by not addressing in either its oral rulings or written order whether it found evidence of abuse, the trial court had not resolved the central question posed by the mother's arguments. *Id.* at *9. However, we were unable to determine whether there had been abuse by the father without "appropriate findings by the trial court." *Id.* Without more insight into the trial court's credibility determinations and resolutions of factual disputes, we were "left to guess" both whether the trial court considered the father's conduct to constitute abuse and why an equal

---

[8] That section states, in pertinent part, that:

> [A] parent's residential time as provided in the permanent parenting plan . . . shall be limited if the limitation is found to be in the best interest of the minor child and if the court determines, based upon a prior order or other reliable evidence, that a parent has engaged in any of the following conduct:
>
> . . .
>
> (2) Physical or sexual abuse or a pattern of emotional abuse of the parent, child or of another person living with that child as defined in § 36-3-601.

Tenn. Code Ann. § 36-6-406(a).

parenting plan was in the child's best interest. *Id.* at *10. As such, we were unable to "soldier on" and instead vacated the trial court's judgment and remanded for further findings. *Id.*

Here, Mother raised the trial court's lack of findings prior to the issuance of its final order. In moving to request more findings of fact and conclusions of law, or otherwise to reopen the proof relative to factors (8), (11), and (14), Mother specifically requested that the trial court consider the evidence of physical or emotional abuse to limit Father's parenting time under Tennessee Code Annotated section 36-6-406. We concede that section 36-6-406 does not appear to have been raised in this case until after the close of proof in the first trial, unlike in *Friedsam*. Indeed, Father argues that Mother waived consideration of this section by failing to timely raise such an issue in her pleadings.

While a judgment rendered on a matter wholly outside the pleadings is generally void, it is appropriate for the trial court to render judgment on issues tried by consent. "[O]ur courts have the authority to grant appropriate relief to a prevailing party even if that relief was not demanded in the pleadings if the issue was tried by consent." *Renken v. Renken*, No. M2017-00861-COA-R3-CV, 2019 WL 719179, at *4 (Tenn. Ct. App. Feb. 20, 2019) (citing Tenn. R. Civ. P. 54.03). "When issues not raised by the pleadings are tried by consent, 'they shall be treated in all respects as if they had been raised in the pleadings.'" *Id.* (quoting Tenn. R. Civ. P. 15.02). This Court has previously held that a reduction in parenting time under section 36-6-406 was tried by consent when it was raised during opening arguments, significant proof was elicited as to the alleged abuse, and the parties consented to the consideration of the prior court file that documented the father's abuse. *Id.* at *5.

We likewise conclude that this issue was tried by consent. Here, although Mother did not specifically reference section 36-6-406 in her pre-trial pleadings, she did reference allegations of abuse by Father, present significant proof in support of those allegations, and specifically ask that Father's parenting time be limited due to the abuse. Father likewise presented proof that it was actually Mother who was abusive, although he apparently did not believe that this conduct required that Mother's parenting time be limited. Moreover, before the final order was entered, Mother filed a motion in which she explicitly referenced section 36-6-406 and the limitations on parenting time required thereunder. Although Father filed a response in opposition to this motion, he did not object specifically to Mother's assertion that section 36-6-406 was at issue in the case. The trial court's subsequent grant of that motion appears to have been based on an agreed order. Furthermore, Father opened to the door to additional consideration of the abuse issue when he presented testimony during the second hearing of Mother's alleged violent conduct.

Thus, the issue of whether Father's alleged abuse necessitated limitations on his parenting time was properly before the trial court, at least by the time that the trial court re-opened the proof as to the child's best interest and allowed the parties to present

- 10 -

additional proof as to the parties' violent behavior. Despite allowing this additional proof, the trial court made no additional findings to elucidate its reasoning for disregarding the proof of abuse. Certainly, the trial court's obligation to make detailed findings of fact to support its ruling extends to the second hearing where additional proof was presented, particularly in light of the trial court's anemic factual findings concerning abuse in its original order. *See* Tenn. R. Civ. P. 52.01 (requiring such findings "in *all* actions tried upon the facts without a jury") (emphasis added). Indeed, the trial court requested the parties submit proposed findings and conclusions regarding the evidence from both the original hearing and the hearing on the reopened proof. In their proposals, both parties addressed the evidence in the record at length, with an emphasis on describing the allegations of abuse. When issuing its final order, the trial court specifically found that Father's ex-wife's testimony about Father's behavior during their relationship was not credible. Yet the trial court made no further findings regarding the allegations of abuse during the parties' relationship, focusing only on the parties' work schedules in readdressing the child's best interest. Even when reading the final order in conjunction with the original decree of divorce and the trial court's oral findings, we can find "no further illumination from which we might glean whether the trial court found that such abuse was actually proven in this case." *Friedsam*, 2022 WL 3654658, at *9.

Generally, when a trial court fails to meet the requirements of Rule 52, the best course of action is to "vacate the trial court's judgment and remand the case to the trial court for written findings of fact and conclusions of law. *Id.* at *7 (citing *State ex rel. Schrita O. v. Robert T.*, No. W2017-00073-COA-R3-JV, 2017 WL 5501345, at *4 (Tenn. Ct. App. Nov. 16, 2017)). This Court has discretion to "soldier on" with our review when the case involves only a discrete legal issue, or the trial court's reasoning is otherwise "readily ascertainable." *Id.* (citing *Hanson v. J.C. Hobbs Co.*, No. W2011-02523-COA-R3-CV, 2012 WL 5873582, at *10 (Tenn. Ct. App. Nov. 21, 2012)). However, this case's critical issue is not one of law, but of fact—whether abuse occurred.

Mother points to *Jacobsen v. Jacobsen* as authority for requiring this Court to conduct our own review of the evidence to determine whether there was reliable evidence of abuse and thus, whether Father's parenting time should be statutorily limited. In that case, the trial court was presented with allegations of abuse by the mother, some of which were admitted by the father at trial. *Jacobsen v. Jacobsen*, No. M2012-01845-COA-R3-CV, 2013 WL 1400518 (Tenn. Ct. App. April 5, 2013). Without addressing this testimony or making any credibility determinations, the trial court found that the statutory best interest factors weighed in favor of the father being named the primary residential parent. *Id.* at *3. The trial court, however, also mandated that the father attend an anger management course. *Id.* The Court of Appeals took this incongruity as an indication of the trial court's reasoning. *Id.* at *8 ("[W]e are unable to reconcile the decision to designate Father as the primary residential parent without addressing the plethora of evidence of abuse . . . with the decision ordering Father to attend and complete an anger management course."). Thus, the appellate court conducted its own de novo review of the evidence,

concluding that the preponderance of the evidence weighed against the trial court's designation of the father as primary residential parent. *Id.*

Here, unlike in *Jacobsen*, we do not have allegations of abuse that went undisputed. Mother's allegations of abuse were not admitted by Father, and Mother contends that any abuse by her towards Father was a result of Father's aggression. Thus, this case presents the classic "she said, he said" scenario that must be resolved by virtue of credibility. *State v. Ellis*, 453 S.W.3d 889, 907 (Tenn. 2015). As our supreme court has explained regarding this type of situation, "[a]bsent significant proof establishing that one or the other witness was simply lying, the witnesses' demeanor would be a crucial component of evaluating their respective veracity. In such a case, a successor judge would be unable to independently assess the weight of the evidence." *Id.* (footnote omitted). Thus, without some indication of the trial court's credibility determinations regarding the abuse that each party alleged they suffered and some reasoning in apparently overlooking these allegations, we are unable to determine where the preponderance of the evidence lies. We must therefore vacate the judgment and remand to give the trial court another opportunity to clarify its findings and conclusions. If, on remand, the trial court finds evidence of abuse, it should consider the mandatory limitation on the offending party's parenting time required by Tennessee Code Annotated section 36-6-406.

## IV. CONCLUSIONS

The judgment of the Circuit Court for Sumner County is vacated and this case is remanded to the trial court for further proceedings consistent with this Opinion. Costs are taxed to Appellee Jordan Estes Bean, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

- 12 -